## JOHNSON v. VAUGHN.

No. 3512.   Decided December 1, 1920.   Rehearing Denied December
                 7, 1920.   (193 Pac. 1100.)

1.  BROKERS—EVIDENCE HELD TO PROVE COMPENSATION AGREEMENT
    CLAIMED BY BROKER.  In action for services rendered by plain-
    tiff in the sale of defendant's cattle, evidence *held* to sustain
    a finding that defendant agreed to pay plaintiff a difference
    between the purchase price and the original cost of the cattle
    living at the time of the contract, with expenses to date of
    sale, and that the cost of the cattle that had previously died
    was not to be considered, as claimed by defendant.

2.  PAYMENT—INDORSEMENT OF CHECK NOT CASHED HELD NOT AN
    ACCEPTANCE AS PAYMENT.  Where a creditor received the
    debtor's check for a portion of the amount claimed, but in-
    dorsed thereon the words, "Received on account of commis-
    sion," and was unable to cash it by reason of such indorse-
    ment, he did not accept the check in full payment.

Appeal from District Court, Second District, Weber
County; *A. W. Agee*, Judge.

Action by C. B. Johnson against Ed Vaughn.   Judgment
for plaintiff, and defendant appeals.

AFFIRMED.

*Halverson, Kimball & Farr*, of Ogden, for appellant.

*W. A. Skeen*, of Ogden, for respondent.

THURMAN, J.

Plaintiff brought this action to recover the sum of $575 as
compensation for services rendered in the sale of certain
cattle at Ogden, Utah, in November, 1916.   Plaintiff alleges
that he sold the cattle, at defendant's request, upon the prom-
ise of defendant to pay plaintiff for said services any sum of

money he might receive from said sale in excess of $3,425; that said cattle were sold to a purchaser secured by plaintiff for the sum of $4,000; that plaintiff thereby became entitled to the sum of $575 for his services, which sum he demanded of defendant; that defendant has not paid the same.

Defendant denies each and every allegation of the complaint, and affirmatively alleges that the dispute arose between him and plaintiff respecting the amount due plaintiff for said services and the value thereof; that on the 22d day of November, 1916, defendant tendered to plaintiff defendant's check, drawn on a certain bank at Malad, Idaho, for the sum of $200; that defendant had sufficient funds in said bank to pay said check, and the same was tendered to plaintiff in full payment for said services, and accepted by plaintiff in full satisfaction of plaintiff's demand.

The plaintiff testified at the trial that in November, 1916, at Ogden, Utah, he met defendant, and inquired of him concerning a bunch of cattle defendant had bought in Denver some time before. Defendant replied that he had had bad luck with the cattle; that they had started to die on him, and asked plaintiff if he could sell them. Plaintiff asked the price at which they could be bought, and defendant replied that he would take $175 per head for the heifers that were left and $450 for the bull, which was the amount they had cost. Plaintiff then told the defendant he thought he could sell them, and made an appointment to meet him later. A few hours later, after seeing his party, he met defendant again, and told him he wanted to make something out of the transaction, and said, "We will figure up what it comes to." They figured up, and found the cost $3,425. Plaintiff then said to defendant, "Now, that is what you want for them, Ed?" and defendant said, "Yes." Plaintiff then told defendant he would bring the party up, and that defendant should ask him $4,000, because he (plaintiff) wanted to make some money out of it. Defendant said, "All right; I hope you do."

The testimony then shows that on the Saturday following the deal was consummated at Malad, Idaho, where the cattle

were at that time; that the sum of $1,000 was paid defendant at Malad, and $3,000 a few days later at Ogden, Utah, at which time defendant handed plaintiff a check for $200, and told him that that was all he would get for his services. Plaintiff testified he refused to accept the check in full settlement, and defendant refused to pay more, and went away. Plaintiff indorsed on the check, "Received on account of commission," and presented it to the bank for payment. The bank refused to pay the check on account of the indorsement. Plaintiff kept the check, which was never paid, and produced it at the trial. There were 18 head of cattle, 17 heifers, and 1 bull. Two heifers had died since the purchase in Denver.

The defendant's version of the transaction was that plaintiff asked him concerning the price of the cattle, and he told plaintiff he would take what they cost him; he would not like to quit loser. Defendant said that later he saw plaintiff, and plaintiff asked him if he had figured up the cost. Defendant said, "No." Plaintiff asked him if he would price them at $4,000. Defendant said, "Yes." After that plaintiff went to Malad and consummated the deal with the purchaser.

Concerning the $200 check which defendant gave plaintiff for services, the effect of defendant's testimony is that he and plaintiff disagreed as to the terms of settlement; that on November 22, 1916, he gave plaintiff the check for $200 in full settlement, and plaintiff accepted it and has never returned it.

Defendant further testified he never knew plaintiff was selling the cattle to some one else; he never knew that a third party was interested in the transaction until his agent told him. . He also testified to certain expenses incurred on account of the cattle, to wit, freight from Denver, cost of keeping them until they were sold, taxes paid, and traveling expenses, all of which defendant claims entered into the cost of the cattle, the original cost of the cattle at Denver was $150 per head for the heifers and $450 for the bull.

The court found the following facts:

"(1) That in the month of November, 1916, the defendant was

the owner of 18 head of cattle, then at Malad, Idaho, which he desired to sell, and that he entered into an agreement with the plaintiff, by which he agreed that if plaintiff would effect a sale of said cattle, he, the plaintiff, should receive and retain as compensation for his services whatever sum said cattle should be sold for, over and above the amount which they had cost the defendant up to the time of such sale.

"(2) That said plaintiff, on or about November 22, 1916, effected a sale of said cattle for the sum of $4,000, in cash, all of which the defendant received and retained.

"(3) That the cost of said cattle to the defendant, up to the time the same were so sold, including the sum paid therefor in Denver, Colo., the freight thereon, with interest on said sums, taxes paid thereon, and the expense of keeping the same from the time they were bought by defendant until so sold, was $3,582.82, or $417.18 less than the sum for which they were sold by the plaintiff.

"(4) That on the 22d day of November, 1916, after the plaintiff had effected a sale of said cattle and the defendant had received therefor the said sum of $4,000, the defendant tendered to the plaintiff his check for $200, drawn on a bank at Malad, Idaho, and payable to the plaintiff or order, in full payment for the services of the plaintiff in the sale of cattle, but the plaintiff refused to accept said check in full settlement of his claim for such services, but retained the same, and indorsed thereon the words, "Received on account of commissions." That said check was afterward presented to the bank on which it was drawn, and payment was refused because of said indorsement, and the said check was returned to the plaintiff and retained by the plaintiff until introduced in evidence on the trial hereof, but has never been paid, and the defendant has never paid the plaintiff, anything for his services in effecting said sale."

As conclusions of law the court found that upon plaintiff surrendering the $200 check to defendant, or leaving it with the clerk of the court for defendant, plaintiff was entitled to judgment for $417.18, with 8 per cent. interest from November 22, 1916, and costs of the action.

Defendant assigns as error the findings of the court, entry of judgment, conclusions of law, and order denying the motion for a new trial. Appellant's principal grievance seems to be that the court in its findings did not take into consideration the cost of all the cattle and the cost of keeping them, including those that died. It is manifest the court did not take these matters into consideration. Whether or

not it should have done so is the main question to be determined.

The testimony of plaintiff shows that when he asked defendant a price at which the cattle could be bought, defendant said he would take $175 per head for the heifers that were left and $450 for the bull, which was the amount they had cost. As there were only 17 heifers left at that time, a simple mathematical calculation gives as a result $3,425, the amount alleged in the complaint. As the heifers cost only $150 per head in Denver, in charging $175 per head, as testified by plaintiff, both plaintiff and defendant must have understood that the extra $25 per head was intended to cover incidental expenses incurred by defendant. Plaintiff says they figured it up, and it amounted to $3,425. The court took the view that the original cost of the cattle living at the time of the contract between plaintiff and defendant, with the freight thereon and interest on both amounts, together with taxes and costs of keeping the cattle to the date of the sale, were the factors to be considered in determining the amount of plaintiff's compensation. We are of the opinion that the evidence amply justified the conclusion reached by the court. The court, on the testimony of plaintiff alone, would have been justified in finding that the cost and expenses amounted to only $3,425, as alleged by plaintiff. But the court considered the testimony of defendant, as well, and gave to it such effect as the court considered it ought to have. In so doing it found that the $3,425 did not cover the entire cost, but that the true amount was $3,582.82. The effect of this finding was to reduce the compensation claimed by plaintiff from $575 to $417.18, for which amount judgment was entered.

In view of the fact that the court found less for the plaintiff than under the evidence it might have found, it would seem that defendant has no substantial grounds for complaint. But as the finding of the court contained a detailed statement of the factors entering into its computation, it becomes necessary to briefly consider the factors enumerated: (1) The cost of the cattle in Denver, 17 heifers at $150 per

head, and 1 bull at $450, $3,000; (2) freight from Denver, $129.20; (3) interest on these amounts at 8 per cent. per annum for a period of 9½ months between the purchase and sale, $198.18; (4) taxes, $45; (5) costs of keeping the 17 heifers and the bull 9½ months, at $1 per head per month, $171. This gives a total cost of $3,543.38. As before stated, the court found the cost of the cattle, including the various items specified in its findings, to be $3,582.82. There is a discrepancy between the two amounts of $39.44 in favor of defendant; that is, defendant, in the computation made by the court, is credited with $39.44 as expenses more than is justified by the court's basis of computation. Of this discrepancy defendant certainly cannot complain.

The court refused to allow the cost of the heifers that died, the cost of their keeping while alive, and the passenger fare to Denver and return. We are unable to find anything in the evidence to justify defendant's contention that these factors should have been considered. The clear and unequivocal testimony of the plaintiff was to the effect that the cost was limited to the cattle that were left and in being at the time he negotiated the sale.

It is also contended by appellant that the court erred in finding that the plaintiff refused to accept the $200 check in full payment for his services. As to this question, the testimony is in conflict. The plaintiff testified he did not accept the check in full payment, and his manner of dealing with it afterwards excludes the idea that he did so accept it.

We find no prejudicial error in the record. The judgment of the trial court is affirmed, with costs.

CORFMAN, C. J., and FRICK, WEBER, and GIDEON, JJ., concur.